IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDY BUXTON, | ) |
| Plaintiff | ) Case No. 2:21-cv-1053 |
| v. | ) Judge David S. Cercone |
| | ) Magistrate Judge Patricia L. Dodge |
| JOHN WETZEL, *et al.*, | ) |
| Defendants. | ) |

# REPORT AND RECOMMENDATION

**I.  Recommendation**

For the reasons that follow, it is respectfully recommended that the Court grant in part and deny in part the Motion to Dismiss (ECF 30) filed by Defendants John Wetzel, Melinda Adams and Karen Feathers and dismiss without prejudice the claims Plaintiff asserts against them. It is also recommended that the Court dismiss without prejudice the claims Plaintiff asserts against the unserved and unnamed Jane Doe and John Doe defendants pursuant to the screening provisions set forth in 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.  Report**

  **A.  Relevant Background**

During the events in question in this lawsuit, Plaintiff Andy Buxton was in the custody of the Pennsylvania Department of Corrections ("DOC") and housed at SCI Mercer.[1] Plaintiff is proceeding *pro se* and the Court has granted him leave to proceed *in forma pauperis*.

---

[1] According to Plaintiff, he is still in the custody of the DOC. He states that in September 2021 the DOC transferred him from SCI Mercer and currently houses him at a community treatment center located in Braddock, Pennsylvania. (ECF 40-2, Pl's Decl. ¶¶ 1-2.)

The Complaint (ECF 18), which Plaintiff filed when he was still an inmate at SCI Mercer, names as defendants: (1) John Wetzel, the former Secretary of the Department of Corrections ("DOC"); (2) SCI Mercer's Superintendent Melinda Adams; and (3) Karen Feathers.[2] The Complaint also lists a Jane Doe and a John Doe defendant. (ECF 18 ¶ 1.)

Plaintiff alleges that Defendants, as a group, violated his constitutional rights by exposing him to Covid from August 2020 through January 2021 because they "failed to comply and enforce Covid, CDC, DOC, SCI Mercer, and enhance[d] quarantine precautions" on his housing unit. (*Id.* ¶ 3; *see also id.* ¶ 14.) Plaintiff asserts that inmates who were temporarily transferred from SCI Mercer to attend court or medical appointments were placed on his housing unit upon their return. Plaintiff acknowledges that this would occur only after these inmates were housed on one of SCI Mercer's Covid medical units for 14 days. He alleges, however, that these inmates did not first obtain a negative Covid test before they were designated to his unit. Thus, Plaintiff claims, he was placed in direct contact with "with inmates who were infected with Covid and/or exposed to Covid[.]" (*Id.* ¶¶ 2, 3, 5.)

Plaintiff also alleges that Defendants did not provide him with any personal protective equipment ("PPE") (*id.* ¶¶ 9, 10) and that staff at SCI Mercer "would look and sound sick, not wash their hands[ ] after coughing, sneezing or touching their face before passing out the meals, mail, and medication, etc." (*Id.* ¶ 12). No smell or taste tests were conducted, and no enhanced cleaning occurred. Additionally, no hand sanitizers were available. (*Id.* ¶¶ 11, 14.)

---

[2] The Complaint does not identify the positions held by any of the defendants, but the Court may take judicial notice that during the events in question in this lawsuit Wetzel was the Secretary of the DOC and Adams was (and still is) the Superintendent of SCI Mercer, since those facts are a matter of public record. *See* www.cor.pa.gov. In the Motion to Dismiss, Feathers is identified as the Chief Health Care Administrator at SCI Mercer. Whatever position Feathers holds at SCI Mercer, Plaintiff fails to state a claim against her (and all defendants) for the reasons below.

Plaintiff admits that steps were taken to protect him while he was at SCI Mercer. For example, Plaintiff acknowledges that staff at SCI Mercer were provided with PPE. (*Id.* ¶ 9). He also acknowledges that between March 2020 and January 2021 he "was placed on enhance[d] quarantine many times due to being exposed to Covid[.]" (*Id.* ¶ 6.) During these occasions, Plaintiff explains, he could not go to other parts of his housing unit except for when he took a shower. (*Id.* ¶¶ 7-8.)

Notably, Plaintiff does not allege that he was infected with Covid. However, he claims that because he was exposed to Covid he "suffered daily pain" and "emotional stress." (*Id.* ¶ 13.) He brings a constitutional tort claim against each defendant under 42 U.S.C. § 1983 asserting that he or she violated his rights under the Eighth Amendment.[3] (*Id.* at p. 2, § III.) As relief, Plaintiff seeks money damages from each defendant. (*Id.* at p. 5, § VI.)

Pending before the Court is the Motion to Dismiss filed Sec. Wetzel, Supt. Adams and Feather under Federal Rule of Civil Procedure 12(b)(6). (ECF 30.) The Motion is fully briefed. (ECF 31, 40.)

---

[3] Plaintiff also asserts that his exposure to Covid violated his rights under the First Amendment (ECF 18 at p. 2), but none of the allegations made in the Complaint implicate his rights under the First Amendment. Rather, the allegations in the Complaint only raise a challenge to the conditions of Plaintiff's confinement at SCI Mercer and Defendants' alleged deliberate indifference to his health and safety. The Eighth Amendment, "through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). This prohibition against cruel and unusual punishment guarantees that prison officials must provide humane conditions of confinement. Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "'take reasonable measures to guarantee the safety of the inmates[.]'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

One of the arguments made in the Motion to Dismiss is that Plaintiff's claims should be dismissed because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). The Court notified the parties that since a declaration was attached to the motion to support the exhaustion argument, it would be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 with respect to the issue of exhaustion of administrative remedies. (ECF 32.) *See Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010) (district court must provide notice to pro se prisoners when converting a motion to dismiss into a motion for summary judgment).

### B. Standard of Review

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11.

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

4

U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

As noted above, that portion of the motion to dismiss in which Defendants raise the exhaustion defense will be treated as a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court is the finder of fact with respect to the defense that a plaintiff failed to exhaust available administrative remedies as required by PLRA. *Hardy v. Shaikh*, 959 F.3d 578, 581 n.1 (3d Cir. 2020); *Paladino v. Newsome*, 885 F.3d 203, 210-11 (3d Cir. 2018); *Small v. Camden Cnty.*, 728 F.3d 265, 269-71 (3d Cir. 2013).

Finally, "[a] document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

5

by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). Additionally, the Court must "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim[,]" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

### C. Discussion

#### 1. Failure to Exhaust Defense

The PLRA mandates that an inmate exhaust "such administrative remedies as are available" before bringing a suit challenging prison conditions. 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Supreme Court has repeatedly observed that the PLRA's exhaustion requirement "is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) and *Jones v. Bock*, 549 U.S. 199, 211 (2007)). Exhaustion is mandatory under the PLRA regardless of the type of relief sought and the type of relief available through administrative procedures. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Courts are not given discretion to decide whether exhaustion should be excused, *Ross*, 136 S. Ct. at 1858, and there is no exception to the exhaustion requirement based on "futility." *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002) (citations omitted).

6

The PLRA's mandatory exhaustion requirement means not only that a complaint filed before administrative remedies are exhausted is premature and cannot be entertained, but also that a failure to exhaust administrative remedies in accordance with a prison's grievance procedures constitutes procedural default. That is so because "the PLRA's exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93-95; *see also Spruill v. Gillis*, 372 F.3d 218, 227-30 (3d Cir. 2004).

Failure to exhaust is an affirmative defense under the PLRA. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Defendants have the burden of proving that Plaintiff failed to exhaust his available administrative remedies. *See*, *e.g.*, *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). The Court of Appeals has explained that if the defendant shows that the inmate failed to exhaust his administrative remedies, then "the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her."[4] *West v. Emig*, 787 F. App'x 812,

---

[4] The Supreme Court explained in *Ross* that the term "available" means "capable of use" to obtain "some relief for the action complained of." 136 S. Ct. at 1859 (quoting *Booth,* 532 U.S. at 738).

> [It] identified "three kinds of circumstances in which an administrative remedy, although officially on the books," is not "available" because it is "not capable of use to obtain relief": (1) when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when it is "so opaque that it becomes, practically speaking, incapable of use," such as when no ordinary prisoner can discern or navigate it; or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Rinaldi*, 904 F.3d at 266-67 (quoting *Ross*, 135 S. Ct. at 1859-60). *See also Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020) (misleading or deceptive instructions from a prison official, as well as clearly erroneous statements, can render a grievance process unavailable). The Court of Appeals has further held "that as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement" but only as to the matters complained of and the relief sought in the grievance. *Shifflett*, 934 F.3d at 365.

814 (3d Cir. 2019) (citing *Rinaldi*, 904 F.3d at 268). Absent a situation where administrative remedies are not "available," a court may not excuse an inmate's failure to exhaust "irrespective of any 'special circumstances.'" *Ross*, 136 S. Ct. at 1856.

Importantly, the prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *Spruill*, 372 F.3d at 230-31 ("prison grievance procedures supply the yardstick for measuring procedural default."). Thus, the procedural requirements for exhaustion in a given case "are drawn from the policies of the prison in question rather than from any free-standing federal law.

The DOC's relevant inmate grievance system is set forth in DC-ADM 804, which is a three-tier administrative remedy system. Under DC-ADM 804, an inmate must present his grievance to the Facility Grievance Coordinator for initial review. The inmate must appeal an adverse determination by the Facility Grievance Coordinator to the Superintendent of the inmate's respective institution. From there the inmate must appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") for appeal to final review. (ECF 31-1, West Decl. ¶¶ 3-9.)

Defendants argue that Plaintiff did not exhaust his administrative remedies with respect to the claims he asserts in the Complaint. They point out that Plaintiff admitted this in the Complaint. (ECF 18 at p. 5.) Therein, Plaintiff alleged that he did not exhaust his administrative remedies because DC-ADM 804's grievance procedure "was unavailable to me, confusing and misrepresent, (sic) by the Defendants." (*Id.*) Because of these allegations, Defendants asked Amanda West, a grievance officer with SOIGA, to review Plaintiff's grievance records to see whether he appealed any grievances to SOIGA in 2020 and 2021. Defendants have attached Ms. West's declaration to their motion. (ECF 31-1.) She states that from January 2020 through March 2021, Plaintiff

8

appealed ten grievances to SOIGA.[5] (*Id.*, West Decl. ¶ 13.) Thus, Defendants argue, Plaintiff's assertion that the DOC grievance process was unavailable to him is not credible.

Plaintiff has filed a declaration in opposition to Defendants' exhaustion defense. (ECF 40-2.) In this declaration, Plaintiff avers for the first time that the grievance process was unavailable to him from around August 3, 2020 until about "a month or two" afterward. He states that during this time he could not obtain a grievance form, that unidentified individuals misrepresented the grievance process to him, discarded his grievances, failed to deliver his grievances and threatened him in order to dissuade him from filing grievances. (ECF 40-2, Pl.'s Decl. ¶¶ 3-14.) Plaintiff also avers that, besides being unable to obtain grievance forms, he lacked access to a grievance box and was not able to submit a grievance to a staff member. (*Id.* ¶ 14.) He also asserts that he submitted a DC-135 Inmate's Request to Staff Member to the Facility Grievance Coordinator and orally complained to other staff members about the unavailability of the grievance process to no avail. (*Id.* ¶ 3.)

In light of the new averments Plaintiff makes in his declaration, it is premature to consider Defendants' exhaustion argument at this stage of the litigation and before the parties have been able to conduct discovery on the issue. Thus, the Court should deny Defendants' motion to the extent it seeks dismissal of Plaintiff's claims for failure to exhaust. The denial should be without prejudice to Defendants reasserting this defense in a dispositive motion at the close of discovery where they may address the aforementioned averments made by Plaintiff in his declaration and any other relevant facts.

---

[5] No further detail is provided, such as the specific dates Plaintiff filed the ten grievances.

2. <u>Eighth Amendment Claims Against Each Defendant</u>

Plaintiff brings his Eighth Amendment claims under 42 U.S.C. § 1983, which "provides a cause of action against state actors who violate an individual's rights under federal law." *Filarsky v. Delia*, 566 U.S. 377, 380 (2012).[6] Section 1983 does not create substantive rights but "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

There is no question that Defendants were acting under color of state law. The only question is whether Plaintiff pled plausible violations of his Eighth Amendment rights. Importantly, a plaintiff must plead a defendant's personal involvement in the alleged deprivation of his constitutional right. *See, e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant can be held liable only for his or her own conduct. *See, e.g.*, *id.*; *see also Parkell v.*

---

[6] Plaintiff does not specify whether he asserts his Eighth Amendment claims against Defendants in their official capacities in addition to their individual capacities. In any event, the Court notes that Plaintiff cannot sue state officials for damages in their official capacity under § 1983 because that is deemed to be the same as suing the state and, therefore, such claims are barred by Eleventh Amendment immunity. *See, e.g.*, *Lavia v. Pennsylvania Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 169 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). Although suits seeking purely prospective relief against a state official in his or her official capacity for ongoing violations of federal law are not barred by the Eleventh Amendment, *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Graham*, 473 U.S. at 167 n.14, Plaintiff does not make (and cannot make) a claim for prospective relief against any defendant in this civil action. He seeks only damages related to misconduct alleged to have occurred when he was at SCI Mercer from August 2020 through January 2021.

*Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Corr. Med.*, 766 F.3d 307, 316 (3d Cir. 2014) (*rev'd sub. nom. on other grounds* 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

To state an Eighth Amendment claim under § 1983 against a defendant in this case, Plaintiff must plead facts that show: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Id.* at 834. The first element sets out an objective inquiry: that the official "knowingly and unreasonably disregarded an objectively intolerable risk of harm." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001). The second element, "deliberate indifference," is a subjective standard: "'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Bistrian*, 696 F.3d at 367 (quoting *Beers-Capitol*, 256 F.3d at 125). That is because "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

Additionally, as set forth above, a plaintiff must plead a defendant's personal involvement in the alleged deprivation of his constitutional right. *Rode*, 845 F.2d at 1207. The Court of Appeals

11

has explained that liability may attach to a supervisor-defendant such as Sec. Wetzel and Supt. Adams for constitutional harms incurred by an inmate if the supervisor: (1) directed a subordinate to take the action in question; (2) had "knowledge of and acquiesced" in the subordinate's unconstitutional conduct, meaning the supervisor knew that his or her subordinate was violating the plaintiff's rights but failed to stop the subordinate from doing so;[7] or (3) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation.[8] *See*, *e.g.*, *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *Rode*, 845 F.2d at 1208.

Here, as Defendants maintain, the Complaint fails to plead sufficient facts against any defendant.[9] Throughout the Complaint, Plaintiff refers to Defendants collectively and Plaintiff does not attribute any misconduct to any specific individual. Thus, Plaintiff's allegations lack the requisite personal involvement of any defendant necessary to state an Eighth Amendment claim. *See, e.g.*, *Mitchell v. Jones*, No. 1:21-cv-131, 2022 WL 2063256, *2 (W.D. Pa. June 8, 2022)

---

[7] Allegations of participation or actual knowledge and acquiescence must be made with appropriate particularity. *Rode*, 845 F.2d at 1208.

[8] "Failure to" claims—failure to train, discipline or supervise—are generally considered a subcategory of policy or practice liability. *Barkes*, 766 F.3d at 316-19.

[9] Under the PLRA, courts are required to screen complaints at any time where, as is the case here, the plaintiff has been granted leave to proceed in forma pauperis. 28 U.S.C. § 1915(e)(2)(B)(ii). It requires the Court to dismiss a complaint that, among other things, fails to state a claim on which relief may be granted. The legal standard for dismissing a complaint under the PLRA for failure to state a claim is identical to the legal standard used when ruling on a motion to dismiss under Rule 12(b)(6). *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Because the Jane Doe and John Doe defendants are unidentified and unserved, the motion to dismiss was not filed on their behalf. However, the same arguments presented in the motion that support the dismissal of the claims against Sec. Wetzel, Supt. Adams and Feathers apply to the Jane and John Doe defendants and the Court should dismiss the claims against them under the PLRA's screening provisions.

(plaintiff's allegations that defendants collectively violated his constitutional rights did not state a claim against any defendant because to state a viable claim against a defendant the plaintiff must allege that defendant's personal involvement).

In his brief in opposition to Defendants' motion (ECF 40), Plaintiff mentions by name only Defendants Sec. Wetzel and Supt. Adams. He contends for the first time that they "allow[ed] staff members to intentionally bring the virus into the institution, allowed staff to wear clothing to cover [their] mouth[s] knowing the CDC didn't approve of this method, let[] known infected staff…distribute food," and also let "several sub-contractors" walk through the facility (along with Supt. Adams) without PPE. Plaintiff also argues that Sec. Wetzel and Supt. Adams failed to ensure that the inmates at SCI Mercer were subject to accurate Covid testing. (ECF 40 at p. 1). He also contends that "multiple inmates" died from Covid at SCI Mercer and the Defendants, collectively, forced inmates to live with a Covid-positive inmate and also eat from trays that had been in contact with "multiple people with the virus." (*Id.*)

Plaintiff cannot defeat a motion to dismiss by relying on facts that he did not include in the Complaint, however. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal marks and citation omitted); *Mitchell*, No. 1:21-cv-131, 2022 WL 2063256, at *2 (factual allegations that plaintiff did not include in the complaint cannot be considered in evaluating a motion to dismiss); *Bracken v. Cty. of Allegheny*, No. 2:16-cv-171, 2017 WL 5593451, at *2 (W.D. Pa. Nov. 21, 2017) ("A pleading may not be amended by a brief in opposition to a motion to dismiss.")

Based on the above, the Complaint fails to allege that any defendant had the requisite personal involvement sufficient to state an Eighth Amendment claim against him or her under

13

§ 1983. Thus, the Complaint also fails plausibly plead facts showing any defendant's deliberate indifference to Plaintiff's health and safety.[10] The Court therefore should grant Defendants' motion and dismiss Plaintiff's claims against Sec. Wetzel, Supt. Adams and Feathers. The Court should also dismiss Plaintiff's claims against the Jane Doe and John Doe defendants. The dismissal should be without prejudice to Plaintiff filing an amended complaint.[11] If Plaintiff files an amended complaint, he must describe in it how each defendant named in the amended complaint violated his rights. Plaintiff should specifically describe **each** defendant's behavior or action and how that behavior or action—or lack of action—resulted in the alleged violation of his rights.

### III.     Conclusion

For these reasons, it is respectfully recommended that the Court grant in part and deny in part the motion to dismiss filed by Defendants Sec. Wetzel, Supt. Adams and Feathers. (ECF 30.) It is recommended that the Court should:

- deny Defendants' motion to the extent it seeks dismissal of Plaintiff's claims for failure to exhaust. The denial should be without prejudice to Defendants' reasserting this defense in a dispositive motion at the close of discovery if this case proceeds to that stage;
- grant the motion to dismiss Plaintiff's Eighth Amendment claims asserted against Sec. Wetzel, Supt. Adams and Feather without prejudice for failure to state a claim; and

---

[10] Defendants argue that Plaintiff cannot state an Eighth Amendment claim against them because the DOC took various preventive steps statewide to stop the spread of the virus. In support, they cite the DOC's website, which sets forth the mitigation measures it put into place in response to the Covid pandemic. *See* https://www.cor.pa.gov/Pages/COVID-19.aspx. The Court may take judicial notice that the DOC's Covid policies existed and its provisions, but at this stage of the litigation the Court can make no assumption about whether Defendants followed those policies at SCI Mercer during the time at issue in this case.

[11] When dismissing a civil rights case for failure to state a claim, a court must give a plaintiff the opportunity to amend a deficient complaint, irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

- dismiss Plaintiff's Eighth Amendment claims asserted against the Jane Doe and John Doe without prejudice for failure to state a claim under § 1915(e)(2)(B)(ii).

Under the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, Plaintiff is allowed fourteen (14) days from the date of this Order to file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


Dated: August 3, 2022

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge