IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDY BUXTON, | ) |
| Plaintiff, | ) Civil Action No. 2:21-cv-1053 |
| v. | ) |
| | ) Magistrate Judge Patricia L. Dodge |
| JOHN WETZEL, *et al.* | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**[1]

Pending before the Court is a Motion for Summary Judgment filed by Defendants John Wetzel, Malinda Adams, Karen Feather, and Adam Magoon. (ECF No. 80.) For the reasons that follow, Defendants' motion will be granted.

**I.   Relevant Procedural History**

Plaintiff Andy Buxton brings this *pro se* civil rights action under 42 U.S.C. § 1983, concerning events that occurred at the State Correctional Institution at Mercer when he was housed there as an inmate in the custody of the Pennsylvania Department of Corrections ("DOC").

Buxton filed his original Complaint while he was an inmate at SCI Mercer, alleging that Wetzel, Adams, Feather, and two Doe defendants violated his constitutional rights by exposing him to COVID-19 from August 2020 to January 2021. (ECF No. 18.) The three named defendants filed a Motion to Dismiss. (ECF No. 30.) That motion was denied in part and granted in part without prejudice. (ECF No. 46.) Buxton was ordered to file an Amended Complaint. *Id.*

Buxton filed an Amended Complaint, which is the operative document. (ECF No. 47.) In the Amended Complaint, he asserted claims against the named Defendants and a Jane Doe

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

defendant. *Id.* The named Defendants then filed an Answer. (ECF No. 48.) After some delay caused by Buxton's failure to maintain a current address with the Court, the parties subsequently engaged in discovery which necessitated multiple rulings from the Court.[2] During this period, the Court issued multiple Case Management Orders, one of which required that Buxton identify and serve the Jane Doe defendant. (ECF No. 75.) Because he failed to do so, all claims against the Jane Doe defendant were dismissed by Order of Court. (ECF No. 96.)

Defendants' Motion for Summary Judgment is supported by a Brief, a Concise Statement of Undisputed Material Facts, and an Appendix of exhibits. (ECF Nos. 80, 81, 83, and 82, respectively.) Buxton filed a Response in Opposition to the Motion for Summary Judgment, a Brief in Support, a Memorandum in Opposition, a Reply to Defendants' Concise Statement of Undisputed Facts, and a Concise Statement of Undisputed Material Facts with attached exhibits. (ECF Nos. 85, 86, 87, 88, and 90, respectively.) Defendants then filed a Reply and a Response to Buxton's Concise Statement of Material Facts. (ECF Nos. 91 and 92, respectively.) In turn, Buxton filed sur-replies to Defendants' filings. (ECF Nos. 94 and 95.) Thus, Defendants' motion is now ripe for consideration.

## II. Factual Background[3]

The undisputed relevant facts are as follows. In response to the COVID-19 pandemic, the DOC took multiple proactive steps to stop the spread of the COVID-19 virus. (ECF No. 83 ¶ 12; ECF No. 88 ¶ 12.) These steps included requiring all staff and inmates to wear masks, screening all incoming and outgoing inmates, enhanced screening of staff upon entrance to DOC facilities,

---

[2] ECF Nos. 65, 69, 74, and 78.
[3] These facts are derived from Defendants' Concise Statement of Undisputed Material Facts, (ECF No. 83,) Buxton's Reply to Defendants' Concise Statement of Undisputed Material Facts, (ECF No. 88,) Buxton's Concise Statement of Undisputed Material Facts, (ECF No. 90,) and Defendants' Response to Buxton's Concise Statement of Undisputed Material Facts, (ECF No. 92).

mandated isolation of inmates showing symptoms of COVID-19, requiring staff showing symptoms of COVID-19 to be sent home, limiting inmate movement, restricting visitation with family and friends to virtual methods, and providing PPE to all staff members. (ECF No. 83 ¶ 13; ECF No. 88 ¶ 13.)

On August 10, 2020, the first inmate at SCI Mercer tested positive for COVID-19. (ECF No. 83 ¶ 4; ECF No. 88 ¶ 4.) That inmate's entire unit was placed on enhanced quarantine, meaning that movement was limited to showers. (ECF No. 83 ¶ 5; ECF No. 88 ¶ 5). All inmates in enhanced quarantine were observed and assessed for symptoms of COVID-19 and had their temperatures and pulse oxygen checked twice a day. *Id.*

Buxton's cellmate tested positive for COVID-19 on December 5, 2020. (ECF No. 90 ¶ 7; ECF No. 92 ¶ 7.) Buxton was subsequently tested for COVID-19, but his test was negative. (ECF No. 92 ¶ 7).[4] Buxton was subjected to enhanced quarantine procedures from November 17, 2020, to December 19, 2020, and from January 1, 2021, to January 14, 2021. (ECF No. 83 ¶ 8; ECF No. 88 ¶ 8.)

### III. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

---

[4] Buxton asserts that he was told that he was positive for COVID-19 on December 5, 2020. (ECF No. 92 ¶ 7). Although he cites two exhibits in support of this fact, neither offers such support. Exhibit 1, Defendants' Responses to his Request for Production, states that Buxton was tested for COVID-19 on December 7, 2020, and was negative. (ECF No. 90-2 ¶ 15.) Exhibit 8, a medical record entitled "COVID-19 Positive/Pending Provider Infirmary Note," reflects that a test was given to Buxton on December 7, 2020, and that he was discharged to population. (ECF No. 90-9.) In contrast, Defendants provide a laboratory report for Buxton from December 7, 2020, which reveals a negative result for his COVID-19 test. (ECF No. 82-2 at 6.) Defendants further cite to a declaration from CHCA Feather, (ECF No. 82-3), in which she avers that Buxton's prison and medical records reflect no positive test for COVID-19 or indication that he ever presented with symptoms of COVID-19. (ECF 83 ¶ 15.) Notably, the Amended Complaint filed by Buxton does not allege that he ever contracted COVID-19, only that he was exposed to it. (ECF 47.) In any event, whether Buxton actually contracted COVID-19 is not dispositive of any of his claims.

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *Id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *Id.*

Once the moving party has met their initial burden, then the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g.*,

4

*Barnett v. NJ Transit Corp.*, 573 Fed. Appx. 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories . . . sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 Fed. Appx. 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (*pro se* plaintiffs "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")

## IV. Analysis

Buxton asserts that his Eighth Amendment rights were violated by Defendants' failure to follow proper COVID safety measures and as a result, he was exposed to COVID-19.

Two requirements must be met to establish a violation of the Eighth Amendment. First, the deprivation of rights must be objectively "sufficiently serious," and second, a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). "To state a viable failure-to-protect claim, the plaintiff must establish that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that substantial risk; and (3) the defendant's deliberate indifference caused the plaintiff to suffer harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), abrogated on other grounds by *Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020); *Farmer,* 511 U.S. at 834.

The first element sets out an objective inquiry: that the official "knowingly and unreasonably disregarded an objectively intolerable risk of harm." *Id.* at 132. The second element, "deliberate indifference," is a subjective standard: "the prison official-defendant must actually

5

have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). That is because "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842.

Because the element of deliberate indifference is subjective, it "can, like any other form of scienter, be proven through circumstantial evidence and witness testimony." *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017). Because a defendant's state of mind, like other facts, can be proved by circumstantial evidence, the *Farmer* standard does not require a defendant admit his consciousness of the risk of serious harm before liability can be imposed. But even gross errors of judgment are not constitutional violations; liability requires subjective, not objective, culpability. *See Farmer*, 511 U.S. at 843 n.8. As the Court of Appeals for the Third Circuit has explained:

> "Deliberate indifference," therefore, requires "obduracy and wantonness," *Whitley v. Albers*, 475 U.S. 312, 319 (1986), which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (stating that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm").

*Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (parallel citations omitted).

A.  Personal Involvement of Wetzel

Defendants first assert that Buxton has failed to show the personal involvement of John Wetzel, the Secretary of the Department of Corrections during the relevant period, in any deprivation of Buxton's constitutional rights. (ECF No. 81 at 3-4.)

It is well established that a plaintiff must plead a defendant's personal involvement in the alleged deprivation of his constitutional rights. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). As stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant is liable only for his or her own conduct. *See, e.g., id.; see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional Medical*, 766 F.3d 307, 316 (3d Cir. 2014) (rev'd sub. nom. on other grounds 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

The doctrine of respondeat superior, which makes an employer or supervisor automatically responsible for the wrongdoing of its employees, does not apply under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 2009 ("Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Rode*, 845 F.2d at 1207. For that reason, supervisor-defendants cannot be held liable for every illegal act that takes place in a correctional facility; they are only liable for their own conduct.

The Court of Appeals has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if the

supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190 (3d Cir. 1995)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1208.

Finally, allegations of personal involvement after-the-fact (for example, by denying a grievance or being the recipient of a complaint letter) are insufficient to give rise to a claim under § 1983 because the failure to investigate alleged misconduct after it has occurred does not state a plausible claim that a defendant had any personal involvement in the alleged misconduct. *Robinson v. Delbalso*, 2022 WL 17248100, *2 (3d Cir. 2022) (explaining that awareness of a grievance or complaint after the allegedly unconstitutional conduct has occurred is insufficient to establish personal involvement).

Defendants argue that Buxton has not presented any evidence that Wetzel was personally involved with, directed, or acquiesced in any lax implementation of COVID-19 protocols at SCI Mercer. (ECF No. 81 at 4). Buxton disputes this argument, asserting the existence of admissible evidence that Wetzel "was aware of any lax conditions at SCI-Mercer." (ECF No. 86 at 3.) In support of this assertion, Buxton cites to the following: "(Exhibit 1, 2, 3, 4, 5,10, 11) Request for Production of Documents #5, 6, 8, 13, 15, RFA #7, 30, Defendants (sic) Response to Plaintiff (sic) First Request for Interrogatories #1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 14, 15, 17, 18, 20,Wetzel Responses

#1, 2, 3, 4, 6, 7, 8, 9, 10, 13, 16, 17, 18, 19. Supplemental responses pursuant to courts (sic) order Request #6, 8, Interrogatories 4, 6)." (ECF No. 86 at 3.) He provides no further explanation of the relevance of these multiple discovery responses to his claim against Wetzel.

Merely citing generally to voluminous evidence in response to a motion for summary judgment is not sufficient to raise an issue of fact. It is not the Court's responsibility to sift through voluminous cited exhibits in search of evidence that may support Buxton's claim. At any rate, however, the Court has reviewed all of the documents cited by Buxton and concludes that they do not provide any facts that could support a claim against Wetzel. For example, one of the cited exhibits, "Wetzel Responses #1, 2, 4, 6, 7, 8, 9, 10, 13, 16, 17, 18, 19" (ECF No. 90-5) fails to reveal any evidence that could support Wetzel's personal involvement in any events at SCI Mercer. As relevant to Buxton's claim against Wetzel, these responses state that all COVID-related information necessary for the safe operation of facilities was provided to all Commonwealth correctional institutions (Wetzel response to Interrogatory No. 4); that Wetzel does not conduct investigations (Wetzel response to Interrogatory No. 13); and that Wetzel was aware that inmates were at risk for exposure to COVID and were exposed to COVID (Wetzel response to Interrogatory Nos. 16 and 18). Similarly, Buxton's Concise Statement of Undisputed Material Facts contains only one relevant reference to Wetzel as it relates to the Eighth Amendment claim: a statement that Wetzel had knowledge that "inmates" were exposed to COVID-19. (ECF No. 90 ¶ 15.)

None of these facts support the personal involvement of Wetzel in any violation of Buxton's civil rights. The mere fact that Wetzel was aware that during the pandemic that inmates were at risk to being exposed to COVID-19, even if supported in the record, does not support a claim that he had personal involvement in the conditions at SCI Mercer. Indeed, given the nature

9

of the pandemic and its impact on all individuals, possible exposure of inmates to COVID was likely. Moreover, Buxton fails to provide any evidentiary support for his bald statement that Wetzel was aware of "lax conditions" at SCI Mercer. Further, as Wetzel stated in his interrogatory answers, all COVID-related information necessary for the safe operations of facilities was provided to all Commonwealth correctional institutions.

In short, Buxton has failed to demonstrate a genuine issue for trial as to Wetzel's personal involvement in any lax enforcement of COVID-19 protocol at SCI Mercer. As a result, Wetzel is entitled to summary judgment in his favor.

B. <u>Eighth Amendment claim</u>

Defendants next argue that they are entitled to summary judgment on Buxton's Eighth Amendment claim because he has failed to establish that Defendants consciously ignored the threat posed by COVID-19. (ECF No. 81 at 4-9.)

As noted above, in order to demonstrate the existence of deliberate indifference to a risk of harm, a plaintiff must show that the prison official had a "sufficiently culpable state of mind." *Id.* at 834. While the risk of harm is an objective requirement, the standard for deliberate indifference is subjective; thus, the prison official "must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol*, 256 F.3d at 125.

As set forth herein, Defendants have highlighted the measures taken during the COVID-19 pandemic to protect the prisoners from the spread of the virus. After the first positive case at SCI Mercer was reported, that inmate's entire unit was placed on enhanced quarantine and immediately deep cleaned. (ECF No. 83 ¶¶ 4-6; ECF No. 88 ¶¶ 4-6.) SCI Mercer was the first prison to conduct a 72-hour institution-wide lockdown and deep clean; other facilities quickly

adopted the same approach. (ECF No. 83 ¶ 7; ECF No. 88 ¶ 7.) Defendants assert that the DOC as a whole implemented an aggressive approach to the pandemic including the following steps:

> [R]equiring that all staff and inmates wear masks; screening all incoming and outgoing inmates; subjecting all staff members to enhanced screening upon entering the facilities; mandating that inmates showing symptoms of COVID-19 virus will be isolated and staff with symptoms will be sent home; limiting inmate movements and mandating 16 and then 8-man cohorts; and restricting visitation with family and friends to virtual methods. Additionally, PPE was provided to all staff members, including masks. The COVID vaccine and booster shots have been made available to all inmates who wish to accept them.

(ECF No. 83 ¶¶ 13-14; ECF No. 88 ¶¶ 13-14.)

Buxton does not dispute that the DOC mandated these precautionary measures. Rather, he claims that these measures were not implemented or alternatively, were not adequately maintained or enforced at SCI Mercer. Notably, however, numerous district courts have held that "where a detention facility has taken concrete steps toward mitigating the medical effects of COVID-19, an incarcerated person will fall 'well short' of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely 'eliminate all risk' of contracting COVID-19, notwithstanding even serious preexisting medical conditions the prisoner may have." *Pumba v. Kowal*, 2022 WL 2805520, at *4 (E.D. Pa. July 18, 2022) (quoting *Hope v. Warden York County Prison*, 972 F.3d 310, 330-31 (3d Cir. 2020)). In that case, the court rejected a constitutional claim based on a sergeant permitting a pod worker who tested positive to clean the plaintiff's cell without wearing a mask and presumably exposing him to COVID-19. The court further noted that the plaintiff alleged that the sergeant acted negligently, resulting in the spread of the virus, but "a claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation." *Id.* at *5. *See also Greene v. Ellis*, 2022 WL 4288279, at *3 (D.N.J. Sept. 16, 2022) (prisoner alleged that jail did not provide adequate

social distancing and that there was not a mask exchange program, but this was insufficient to show unconstitutional punishment); *Chapolini v. City of Philadelphia*, 2022 WL 815444, at *15 (E.D. Pa. Mar. 17, 2022) (allegations that prisoner was housed with multiple cellmates who did not go through proper quarantine insufficient to show unconstitutional punishment or deliberate indifference).

Thus, even if conditions at SCI Mercer were not completely compliant with guidance from the Centers for Disease Control and Prevention specific to correctional and detention facilities, the Pennsylvania Department of Health, or its own medical team, such facts would not establish a claim of deliberate indifference. As Judge Lenihan observed in a similar case: "Simply because the execution of COVID-19 protocols may have been nonoptimal at times, the alleged deficiencies fall well short of evidencing deliberate indifference by the named Defendants." *Jones v. County of Allegheny*, 2022 WL 2806779, at *6 (W.D. Pa. June 24, 2022). *See also Easley v. Wetzel*, 2021 WL 1200214, at *6 (W.D. Pa. Feb. 26, 2021) (Lanzillo, M.J.), *report and recommendation adopted*, 2021 WL 1197483 (W.D. Pa. Mar. 30, 2021).

In opposition to the motion for summary judgment, Buxton acknowledges that the DOC implemented COVID-19 protocols in the relevant time period but asserts that certain individuals at SCI Mercer failed to comply with the protocols. Buxton makes certain assertions about each of the remaining defendants.

Regarding Feather, a Corrections Health Care Administrator, Buxton claims that Feather knew that a sick call slip that he submitted was refused in August of 2020. (ECF No. 90 ¶ 5.) However, he provides no evidentiary support for this assertion.[5] He also asserts that he informed

---

[5] Buxton cites to: (1) Exhibit 7, his sick call request slip, (ECF No. 90-8), on which there is no reference to Feather; and (2) Exhibit 10, (ECF No. 90-11), his declaration in which he baldly asserts, "Feathers [sic] was deliberately indifferent to plaintiff when she refused plaintiff[']s sick call slip in August 2020." *Id.* ¶ 15. There is no indication

12

Feather (as well as Defendant Adams and "Morren") of "symptoms" and "malfunction of thermometers" at some unspecified time. (ECF No. 90-11 ¶ 12.) He does not assert what, if any action, was taken following his complaints or in fact, why these facts support his claim. At best, he has shown that Feather was aware of Buxton's complaint of symptoms. Thus, as to Feather, Buxton has failed to show any relevant action or inaction on her part.

With respect to Magoon, a corrections officer, Buxton claims that Magoon tested positive for COVID-19 on November 22, 2020, and returned to work on December 3, 2020, less than 14 days later. (ECF No. 90 ¶ 10.) Buxton's cellmate tested positive for COVID-19 on December 5, 2020. (ECF No. 90 ¶ 10; ECF No. 92 ¶ 7.) Buxton also asserts that he observed Magoon cough and sneeze while handing mail to Buxton and his cell mate some time "during enhanced quarantine." (ECF No. 90-11 ¶ 24.) The one-time-only cough and sneeze during mail delivery is insufficient to show a constitutional violation. Additionally, Buxton's evidence about Magoon's return to work fails to show that Magoon knew that his timing put the inmates at risk. The sole evidence of Magoon's state of mind comes from Magoon's declaration, in which he states that his return to work on December 3, 2020, was "[a]fter the mandatory quarantine period, and after having recovered from COVID." (ECF No. 82-4 ¶ 11.) Accordingly, there is no evidence that Magoon actually knew or was aware of an excessive risk to inmate safety stemming from his return to work.

As to Adams, the Superintendent of SCI Mercer, Buxton claims that Adams had knowledge of Magoon's early return to work. (ECF No. 90 ¶ 10; ECF No. 90-11 ¶ 18.) Buxton further asserts that he observed Adams not wearing a mask an unknown number of times between August 2020

---

that this statement is made on Buxton's personal knowledge of Feather's involvement. *See* Fed. R. Civ. P. 56(4) (requiring a declaration used to oppose a motion for summary judgment to be, *inter alia*, made on personal knowledge).

and December 2020. (ECF No. 90-11 ¶ 14.) As set forth above, knowledge of an event after the fact is an insufficient basis for § 1983 liability, thus Adam's knowledge about Magoon's return to work is irrelevant. Adam's failure to wear a mask an unspecified number of times and in unspecified circumstances, without evidence to show that she actually knew or was aware that she was causing an excessive risk to inmate safety, is insufficient to show deliberate indifference.

In short, even when viewing these facts in the light most favorable to Buxton, they fail to establish a basis upon which a reasonable jury could find that these prison officials actually knew that their actions constituted an excessive risk to inmate safety and were deliberately indifferent to that risk. Accordingly, summary judgment will be granted on the Eighth Amendment claim.

        C.      <u>First Amendment claim</u>

Defendants next argue that they are entitled to summary judgment on Buxton's First Amendment claim. (ECF No. 81 at 9). The Amended Complaint lists the First Amendment as one of the federal laws Buxton claims was violated (ECF No. 47 at 3), but no factual basis was stated for such a claim. In support of their motion, Defendants assert that to the extent Buxton is claiming retaliation by DOC staff in removing certain property from his cell, he has failed to provide evidence that any of the named Defendants participated in or knew of the removal, as well as when the removal occurred or what was removed. (ECF No. 81 at 9.)

In opposition to the motion for summary judgment, Buxton does not dispute Defendants' characterization of his First Amendment claim. Instead, he argues that he has proffered evidence that "defendants" participated in or knew of the removal of his property. (ECF No. 86 at 6.) He cites to three exhibits: (1) Exhibit 9, (ECF No. 90-10), grievance documents concerning confiscation of excessive commissary items by DOC officers who are not named defendants in this case; (2) Exhibit 10, (ECF No. 90-11), a declaration from Buxton in which he states, in relevant

14

part, that he informed Wetzel and Adams of legal documents being removed from his cell;[6] and (3) Exhibit 12, (ECF No. 90-13), a Civil Cover Sheet from an action in the Court of Common Pleas in which Buxton describes confiscations of property by DOC officers who are not named defendants in this case. None of the cited evidence supports a claim that any of these Defendants participated in the removal of Buxton's property. Further, the fact that Buxton informed Wetzel and Adams after the fact, even if true, cannot be the basis for a retaliation claim against Wetzel and Adams. Indeed, it cannot be the basis of any § 1983 claim, because, as set forth above, being informed of an action after its occurrence is insufficient to establish personal involvement in the action. *Robinson*, 2022 WL 17248100, at *2; *Mack v. Loretto*, 839 F.3d 286, 295 (3d Cir. 2016) (First Amendment retaliation claim dismissed where plaintiff only spoke to defendants after alleged retaliation had occurred).

Defendants are entitled to summary judgment on this claim.

    D.    <u>Negligence</u>

As a final matter, in the operative complaint, Buxton asserts violations of his rights under the United States Constitution. (ECF No. 47.) However, in a declaration he attaches to his Concise Statement of Undisputed Material Facts, he asserts that "the defendant[s'] actions were negligent and that they caused me to be exposed to COVID-19." (ECF No. 90-11 ¶ 26.) In their Reply, Defendants assert that Buxton's "newly asserted" negligence claim must fail because negligence is not a basis for a § 1983 claim. (ECF No. 91 at 2.)

The Court need not evaluate a negligence claim in this action because Buxton has not properly asserted one. A plaintiff may not amend his complaint in a response to a motion for

---

[6] Buxton specifies that he informed Wetzel at the time of his release in September 2021. (ECF No. 90-11 ¶ 22.) He does not specify when he informed Adams; however, he does state in his brief that Adams instructed "Roth" to give the confiscated legal materials back, but it did not happen. (ECF No. 86 at 6.)

summary judgment. *Bell v. City of Philadelphia*, 275 Fed. Appx. 157, 160 (3d Cir. 2008). At the summary judgment stage, a plaintiff may only amend his complaint in accordance with the procedure set forth in Federal Rule of Civil Procedure 15(a). *Id.* Because Buxton failed to do so, no negligence claim has been made in this case.

V.     **Conclusion**

For these reasons, the Motion for Summary Judgment, (ECF No. 80) will be granted. An appropriate order will follow.

Dated: February 8, 2024                    BY THE COURT:


/s/ Patricia L. Dodge
PATRICIA L. DODGE
UNITED STATES MAGISTRATE JUDGE